# United States Bankruptcy Court
## District of Maryland
### At Baltimore

| | | |
|---|---|---|
| In re: | * | Case No: 14-26170 |
| | * | |
| DEDRE V. FEYIJINMI, | * | Chapter 13 |
| | * | |
| Debtor. | * | |
| | * | Adversary Proceeding No..: _____ |
| _____ | * | |
| | * | |
| DEDRE V. FEYIJINMI, | * | |
| | * | |
| Plaintiff. | * | |
| | * | |
| v. | * | |
| | * | |
| STATE OF MARYLAND | * | |
| CENTRAL COLLECTION UNIT, | * | |
| | * | |
| Defendant. | * | |

****************************

**COMPLAINT TO DETERMINE DISCHARGEABIITY OF DEBT OWED TO STATE OF MARYLAND CENTRAL COLLECTION UNIT PURSUANT TO 11 U.S.C. §1328 AND FOR CIVIL CONTEMPT FOR VIOLATING DISCHARGE INJUNCTION PURSUANT TO 11 U.S.C. §§524 AND 105**

Plaintiff Dedre V. Feyijinmi, Debtor, ("Plaintiff" or "Debtor") through her counsel, Marie Lott Pharaoh, by way of the within Complaint to Determine Dischargeablility of Debt Owed to the Defendant, State of Maryland Central Collection Unit, ("CCU", "Defendant" or "State of Maryland") and for Civil Contempt Sanctions for Violating Discharge Injunction pursuant to 11 U.S.C. §§524 and105, states as follows:

### JURISDICTION AND VENUE

1. The adversary proceeding arises in and relates to the bankruptcy case captured <u>In re Dedre V. Feyijinmi,</u> United States Bankruptcy Court for the District of Maryland, Case No. 14- 26170 (the "Bankruptcy Case").

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 1328. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

3. Venue properly lies in this District under 28 U.S.C. §1409(a) because the adversary proceeding is related to the Bankruptcy Case.

## PARTIES

4. Plaintiff Dedre V. Feyijinmi is the Debtor in the Bankruptcy Case and resides at 4504 Ingham Road Owings, Mills, MD 21117 in Baltimore County, Maryland.

5. The Defendant State of Maryland Central Collection Unit was created by the Maryland Legislature in 1973 to collect debts owed to every agency run by the State of Maryland.

6. Maryland's Office of the Attorney General ("OAG") represents the State of Maryland all matters in which interests of the State of Maryland are involved.

## BACKGROUND

7. On October 21, 2014 Debtor sought relief under Chapter 13 of the United States Bankruptcy Code.

8. On her Schedule D, she listed the debt owed to Maryland's CCU in the amount of $4000, based on Debtor's recollection at that time.

9. Maryland's OAG filed the original proof of claim on behalf of CCU on April 13, 2015 claiming that she owed $16,008.80. *POC#12*.

10. Debtor's counsel spoke to Ari Kodeck, Esq., Assistant General Counsel with Maryland's OAG, who prepared the proof of claim, explaining that the alleged amount on the proof of claim was not correct and sent him proof of payments made by the Debtor.

11. The proof of claim was amended on May 5, 2015 to reflect that Debtor only owed $7275.33.

12. The amended proof of claim listed the debt as unsecured "Court Order Fees" and attached the Judgment of Restitution and the worksheet showing the payments and interest on the debt.

13. The Debtor's Chapter 13 plan was confirmed on June 16, 2015.

14. CCU did not file an Objection to the Plan; nor did it file a complaint seeking determination of the dischargeability of the debt.

15. The debt in question was provided for in the plan as a general unsecured debt to be paid pro rata after payment in full of priority and secured debts.

16. The Debtor received a discharge on February 26, 2020 and her case closed on June 6, 2020.

17. The debt was the result of a Judgment of Restitution entered on December 8, 2006 in the Circuit Court of Baltimore County Maryland in the amount of $14, 487.00.

18. The Judgment of Restitution was the result of the underlying criminal case wherein Debtor received more public benefits than entitled to for her three young children.

19. Debtor was granted a probation before judgment pursuant to Maryland Criminal Procedure Art. Title 6, Subtitle 2, §6-220 on December 8, 2006.

20. Debtor was granted an Order of Expungement of all records associated with the criminal case on November 10, 2010. *Exhibit 1*.

21. On or about October 21, 2020, Defendant received a letter from CCU stating that she had an outstanding debt in the amount of $9652.77. *Exhibit 2*.

22. On or about October 27, 2020, Plaintiff, pursuant to the contents of the letter requested an appeal of the decision and checked the CCU portal, downloaded the information, and determined that the alleged debt was associated with the debt she thought she had discharged in her Bankruptcy Case, which she mailed with her appeal letter. *Exhibit 3*.

23. The impact of this new development was profound because she thought that the debt owed to the State of Maryland had been discharged, as confirmed to her by her attorney during the Bankruptcy Case and after the discharge. *Exhibit 4*.

24. The circumstances underlying the debt were always a source of discomfort and shame.

25. The criminal case affected her ability to get a job and there was the resultant disgrace associated with being arrested and charged with a criminal offense.

26. On or about February 11, 2021, the Plaintiff spoke to a CCU customer service representative who informed her that CCU was aware of the Bankruptcy Case but that the debt was not dischargeable and that CCU would continue with collection activities, which included garnishing her wages.

27. Plaintiff asked for time to speak with her attorney who handled her Bankruptcy Case.

28. On February 17, 2021, Plaintiff's attorney contacted CCU via email and her email was forwarded to the Maryland Office of Attorney General. *Exhibit 5*.

29. The OAG's office responded: "Good morning, Ms. Pharaoh. I have reviewed your email and the supporting documents. CCU continues to take the position that restitution debts are not discharged. For support, CCU relies on Kelly v. Robinson, 479 U.S. 36 (1986) and its progeny, such as In re Wilson, 8th Cir.BAP (Ark.) 2000, 252 B.R. 739. It is CCU's position that in a Ch 13 context, Ms. Rodriquez-Feyijinmi's guilty plea which

resulted in the imposition of restitution as part of the criminal sentence are included in the broad class of debts that are not discharged." *Exhibit 6*.

30. Plaintiff's counsel responded that, even if the debt was for restitution, neither of the cases cited were controlling on the matter, and that the debt was discharged under 11 U.S.C. §1328(a)(3). *Exhibit 7*.

31. Plaintiff's counsel also informed the OAG that since time was of the essence she would be filing a motion to reopen the case so that the Plaintiff could file the herein Complaint. *Id*.

32. Plaintiff's counsel did not hear any more on the matter until she received an email from the OAG informing her that she could not give any legal advice regarding how to serve the Motion. *Exhibit 8*.

33. Plaintiff's counsel responded that she was not asking how to serve the motion, but to whom to serve the motion, as required by the Bankruptcy and local court rules and Maryland statute, which requires persons to call the OAG's office to obtain that information. *Exhibit 9*.

34. Plaintiff's counsel filed the Motion to Reopen on February 23, 2021 the Motion was granted on February 24, 2021.

### COUNT ONE
### DEBT IS DISCHARGEABLE UNDER 11 U.S. C. §1328: NONE OF THE 12 NONDISCHARGEABILITY PROVISIONS APPLY TO THE DEBT *SUB JUDICE*

35. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 34 of this Complaint as if set forth at length herein.

36. Paragraph (a) of §1328 provides:

Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5);
(2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);
(3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or
(4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

### A BRIEF ANALYSIS OF THE 12 NONDISCHAREGEABILITY PROVISIONS IN § 1328(a)

37. It is instructive to review each paragraph under Section 1328(a) individually and briefly. For the purpose of this analysis, only 1328(a) will be analyzed as the other paragraphs do not apply to a Debtor who has completed her Chapter 13 plan payments without any residual issues.

### Section 1322(b)(5)

**Section 1322(b)(5)**: any debt that "provides for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

*This section is inapplicable because this debt was not in default.*

### Section 507(a)(8)(c)

**Section 507(a)(8)(c)**: "prevents discharge of a tax debt required to be collected or withheld and for which the debtor is liable in whatever capacity."

*This section is not applicable because the debt was not a tax.*

### Section 523(a) (1)(B)

**Section 523(a)(1)(B)**: "discharge under section . . . .1328(b) of this title does not discharge an individual debtor from any debt for a tax or a customs duty."

*This section is not applicable because the debt is not a tax or a customs duty.*

### Section 523(a) (1)(C)

**Section 523(a)** (1)(C)with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

*This section is not applicable because, again, the debt is not a tax liability.*

### Section 523(a)(2)

**Section 523(a)**(2): for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;(B) use of a statement in writing— (i) that is materially false;(ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive; or (C) (i) for purposes of subparagraph (A)— (I) consumer debts owed to a single creditor and aggregating more than $500 [2] for luxury goods or services incurred by an individual debtor on or

within 90 days before the order for relief under this title are presumed to be nondischargeable; and (II) cash advances aggregating more than $750 [2] that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable; and(ii) for purposes of this subparagraph— (I) the terms "consumer", "credit", and "open end credit plan" have the same meanings as in section 103 of the Truth in Lending Act: and (II) the term "luxury goods or services" does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor.

***This section is not applicable because for the debt to be nondischargable under this provision, the creditor is required under Bankruptcy Rule 4007 to initiate an adversary proceeding within the 60 days after the Section 341 hearing, which the State failed to do.***

### Section 523(a)

**Section 523(a) (3)**: neither listed nor scheduled under section 521(a)(1) of this title with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit— (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

***This section is not applicable because the debt was listed and was treated as a general unsecured debt in the Chapter 13 plan, and Debtor fulfilled all her duties as set forth in Section 521(a)(1).***

### Section 523(a)(4)

8

**Section 523(a)(4)** for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;.

*This section is not applicable because the debt did not arise as a result of debtor's fiduciary capacity, embezzlement or larceny.*

### Section 523(a)(5)

**Section 523(a)(5)** for a domestic support obligation

*This section is not applicable because the debt is not for a domestic support obligation.*

### Section 523(a)(8)

**Section 523(a)(5)(8)** unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for— (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

*This section is not applicable as this debt does not arise out of a student loan obligation.*

### Section 523(a)(9)

**Section 523(a)(9):** "for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance."

*This section is not applicable as the debt did not arise out of death or personal injury.*

### Section 1328 (a)(3)

9

**Section 1328 (a)(3)** for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime

*Because the debt arises out of a judgment for restitution, the discussion of the inapplicability of this paragraph will be discussed in more detail infra.*

### Section 1328(a)(4)

**Section 1328(a)(4)**: "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual."

*This paragraph is not applicable because the debt did not arise out of the matters cited.*

### ALTHOUGH THE DEBT ARISES FROM A JUDGMENT FOR RESTITUTION, SECTION 1328(a)(3) HAS NO BEARING ON THE DISCHARGEABILITY OF THE DEBT BECAUSE THE PLAINTIFF WAS NEVER CONVICTED OF A CRIME

38. Section 1328 (a)(3) prevents a discharge of a "debt for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime."

39. Plaintiff agrees that the debt arose from a pre-petition Judgment for Restitution ordering her to pay restitution for impermissibly receiving public benefits for her three young children.

40. In the criminal case, the Circuit Court for Baltimore County granted the Debtor a probation before judgment under Md. Crim. Proc. Art. § 6-220.

41. Under §6-220 (b)(1):

When a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may stay the entering of judgment, defer further proceedings, and place the defendant on probation subject to reasonable conditions if:

    (i) the court finds that the best interests of the defendant and the public welfare would be served; and

    (ii) the defendant gives written consent after determination of guilt or acceptance of a nolo contendere plea.

42. The State merely assumed that the Plaintiff pled guilty in the criminal case to be granted a probation before judgment.

43. There is no language, however, in section 1328(a)(3) referencing a guilty or any other kind of plea.

44. Therefore, whether the Defendant pled guilty in the underlying case is irrelevant.

45. More importantly, the statute's language is unambiguous: Crim. Proc. § 6-220(g) states:

> (1) On fulfillment of the conditions of probation, the court shall discharge the defendant from probation.
> (2) The discharge is a final disposition of the matter.
> (3) Discharge of a defendant under this section shall be without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime.

46. And Maryland's case law: "[A] defendant is not 'convicted' of a crime until he or she is sentenced; and the entry of a probation before judgment provides the defendant an opportunity to avoid the stigma of a conviction." *Schmidt v. State,* 245 Md. App. 400, 409 (2020).

47. As the Plaintiff under Maryland law was never convicted of a crime, the Judgment for Restitution was not included in any sentence because she was not convicted of a crime.

48. Therefore, §1328(a)(3) does not operate to prevent discharge of the debt under review.

**COUNT TWO**
**THE STATE OF MARYLAND VIOLATED THE**
**DISCHARGE INJUNCTION 11 U.S.C. §524(A) AND THIS**
**COURT SHOULD EXERCISE ITS BROAD POWERS**

**UNDER 11 U.S.C. § 105 TO HOLD THE STATE OF
MARYLAND IN CONTEMPT FOR HAVING DONE SO**

49. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 48 of this Complaint as if set forth at length herein.

50. Based on the foregoing thorough analyses of §1328(a)'s 12 provisions prohibiting discharge of a debt in a Chapter 13, it is clear that the Debtor is entitled to a discharge of this debt.

51. Plaintiff is aware that this Honorable Court permitted the reopening of her Bankruptcy Case for the limited purpose of filing a Complaint to Determine the Dischargeability of the Debt.

52. Plaintiff's counsel had very limited time to consider any other actions in this matter, as it seemed the garnishment of the Plaintiff's wages was imminent.

53. Furthermore, she received no response from the OAG regarding giving the Plaintiff time to file the Motion to Reopen, so Plaintiff's counsel was not certain if and when CCU's actions would be stayed.

54. Time was of the essence.

55. Furthermore, as this Court is aware, it is a triumph for a debtor to successfully complete her Chapter 13.

56. The debtor not only has a fresh start financially, but that success flows through all parts of the debtor's life; in many cases giving the debtor a new lease on life, confidence, and hope for the future after have been through so much toil and stress before and during the bankruptcy case.

57. A creditor should not willy-nilly, without regard for the law, take that fresh start away with impunity – no matter how short the duration.

58. Thus, the Plaintiff respectfully request that this Honorable Court exercise its broad equitable powers afforded to it under 11 U.S.C. §105 to consider here arguments to hold the State of Maryland in contempt for violating its Order of Discharge entered in this case on February 26, 2020 and to sanction its contumacious conduct.

59. *In re Karl*, 313 BR 827, 830 (Bankr. Court. W.D. Mo. 2004) is instructive:

> Based on § 105 of the Bankruptcy Code, a bankruptcy court has the inherent power to sanction contumacious conduct and to impose civil contempt sanctions. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *Mountain America Credit Union v. Skinner (In re Skinner),* 917 F.2d 444, 447 (10th Cir.1990) ("While bankruptcy courts do not have inherent civil contempt power . . . we conclude that Congress has granted them civil contempt power by statute."); *Burd v. Walters (In re Walters),* 868 F.2d 665, 670 (4th Cir.1989) (holding that a bankruptcy court's civil contempt powers are incidental to Congress's statutory grant of powers in the Bankruptcy Code and that giving bankruptcy courts the power of civil contempt did not offend notions of Constitutional separation of powers). *See also Brown v. Ramsay (In re Ragar),* 3 F.3d 1174, 1178-79 (8th Cir.1993) (finding the Fourth Circuit's reasoning in *Walters* — holding that bankruptcy courts have civil contempt powers — to be persuasive). Sanctions may either take the form of civil contempt, sanctions not otherwise authorized in the Code, or the form of general damages. 2 *Collier on Bankruptcy* ¶ 105.04[7][b] (Lawrence P. King et al. eds., 15th rev. ed. Matthew Bender 2004). A sanction of civil contempt must not be punitive, but it usually includes costs and attorney's fees inasmuch as those items are compensation for an injured party regarding the losses it suffered as a result of the other's contemptuous behavior. *Hubbard v. Fleet Mortgage Co.,* 810 F.2d 778, 781-82 (8th Cir.1987) ("The commonly stated distinction is that if the penalty is to compensate the complaining party or to coerce the defendant into complying with the court's orders, the contempt is civil.

60. 11 U.S.C. § 524(a) provides:

   A discharge in a case under this title—

   (1)  voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the

debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1192, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

61. "The purpose of the permanent injunction set forth in § 524 and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code, to afford the debtor a financial fresh start." *Rountree v. Nunnery,* 448 B.R. 389, 401 (Bankr. E.D. Va. 2011).

62. As noted in *In re Mejia,* 559 B.R. 431, 442 (Bankr. D. Md. 2016):

> "While § 524(a) does not expressly provide a remedy for a violation of the statutory injunction, the federal courts have uniformly held that bankruptcy courts have authority under § 105(a) to enforce § 524(a) through contempt proceedings. *In re Paul,* 534 F.3d 1303, 1306-1307 (10th Cir. 2008) (citing *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 506-07 (9th Cir. 2002*Cox v. Zale Del., Inc.,* 239 F.3d 910, 916-17 (7th Cir. 2001),*Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 444 (1st Cir. 2000)*In re Nat'l Gypsum Co.,* 118 F.3d 1056, 1063 (5th Cir. 1997)*In re Hardy,* 97 F.3d 1384, 1389 (11th Cir. 1996).

63. The burden of proof in a contempt proceeding is clear and convincing evidence. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 301 (4th Cir. 2000).

64. "Based on the traditional principles that govern civil contempt, the proper standard is an objective one. A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen,* 139 S. Ct. 1795, 1799 (2019).

65. "This standard reflects the fact that civil contempt is a severe remedy and that principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Id.* at 1802. (internal quotation marks, citation, and alteration omitted).

66. "The typical discharge order entered by a bankruptcy court is not detailed. Congress, however, has carefully delineated which debts are exempt from discharge. " *Id.*

67. "Under the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id*. at 1804.

68. The Supreme Court in *Taggart*, *supra*, makes clear that the creditor must look to the law, specifically the Bankruptcy Code to determine if the debt it is seeking to enforce post-discharge is <u>not</u> dischargeable under the Bankruptcy Code before it acts.

69. Congress enacted §1328 for a reason: to guide the Debtor, the Court, creditors, and other interested parties regarding what debts are not dischargeable in a Chapter 13.

70. As analyzed, *supra,* in this Complaint, there are 12 provisions in §1328(a) that address what debts are not dischargeable in a Chapter 13.

71. There is neither obfuscation nor ambiguity, as the language of the statute is clear.

72. The State of Maryland received notice of the Bankruptcy Case and responded with the filing of its proof of claim.

73. Furthermore, it admits that it was aware of the Debtor's discharge.

74. The State's continued collection activities are not objectively reasonable as they are based on "policies" that are not rooted in § 1328 or any case law interpretation of the same.

75. Instead, in this case, the State relied on its own policies, which in no way comported with, or referenced §1328.

76. Since it inferred that the Debtor pled guilty in the criminal case and since the debt was a restitution owed to the State, then the debt was not dischargeable.

77. That language is not found in §1328.

78. Therefore, because its objectively unreasonable policies led the State to act objectively unreasonably in attempting to collect the discharged debt, the State is in contempt of this Court's Discharge Order.

79. The Debtor henceforth seeks actual damages for severe emotional distress caused by the collection activities, to include threats to garnish Plaintiff's wages, costs, attorney fees, and punitive damages.

WHEREFORE, Plaintiff moves this Honorable Court for the following relief:

A. To enter a judgment in her favor on both counts;

B. And grant such other and further relief as is just and appropriate.


Date:  March 25, 2021                              Respectfully submitted,

/s/Marie Lott Pharaoh
Marie Lott Pharaoh
Bar No.: 11080
875 NW 97th St.
Miami, FL 33150
Tel.: (240) 606-3494
Email: mariepharaoh@gmail.com
